Mayor, please report. Can you hear me? Yes, we can hear you. Okay. Charles Cervillo on behalf of the petitioner appellant Stephen Deck. The issue raised in the brief is whether the burdens that are placed upon appellant through California sex registration requirements constitute sufficient restraint for habeas corpus jurisdiction. Now, this is an important issue for appellant because it means that if he's not entitled to habeas corpus jurisdiction, he must suffer through an invasive lifetime state requirement of restraints not shared by the public as a product of an ostensibly constitutionally defective conviction. Could I interrupt you there, sir? Why is it that he couldn't, he's got sort of two different buckets of restrictions and some of them you've enumerated in your briefing. The district court was concerned about the online registration requirement and the risk assessment and thought, I think he voiced, that he thought that ought to be challengeable and that would certainly be lifetime as well. Couldn't that be raised in a 1983 claim? Well, it might be able to be raised in a 1983 claim, but the question here is whether the current structure of the has a false risk assessment online for the appellant is a punitive act. And if it's punitive, it certainly is not a regulatory matter, but a punitive system, which is a burden that carries this registration scheme into being a significant restraint on appellant's liberty. And I might add on that point, the test is whether the burdens cast a significant restraint on the liberty of appellant to do those things which in this country, freemen are entitled to do. That's out of the case Jones versus Cunningham. That's right. And our most recent case really underscores, Munoz really underscores that we're looking at restrictions that, I'm restrictions that most directly restrict Mr. Deck's freedom of movement, please. All right. At ER 137 through 139, there are 22 express conditions that he must sign up for, make that 23, that he must initial every time he goes in, if he's required to do it, the I counted 18 of those are personal appearances for whatever it may be. Obviously, the most salient one is his requirement that he appear yearly to update his picture and fill out the form again and, and give a thumbprint indicating he's, he's who he says he is. Now, initially, he's supposed to give a full set of prints, a palm print, a DNA sample. Now, those seem like significant restraints on human liberty that are not those that free people in this country must endure. So the issue is, is it a significant restraint under Cunningham? All of those are ones restrict his freedom of movement. Because we are bound by our prior case law. The first one, he has to register in person. That seems to me to require his body, you know, to be at a certain place at a certain time. And I think that's true of the second one to re-register in person upon moving. What about three report information about employer in place of employment? Are you are you saying that he has to do that in person? Number three starts with the phrase, I must register in person. If you're referring to number three, it's hard to read these, their print is so small. Well, it says report, another one, number four, report name change. So if he has a name change, which, you know, doesn't happen every year, but if a person has a name change, is it your contention that he has to appear in person to report that? If you're dealing with item number four, it says in person. Okay, so I'm just trying to I'm just trying to get you can answer the question any way you want to answer it. I'm trying to figure out which restrictions you think restrict his freedom of movement. Well, as I said, 18 of these 23 commands require that he go in person to deal with them. So what is your authority for interpreting that he has to show up in person for every one of these things? Well, we'll start with number one. The petitioner filed his his declaration in support of the petition, which was unchallenged below that he had to personally appear to do this. And that's supported by the I think I even cited a Ninth Circuit cases that he had to report in in person. I don't think that's a contested issue that Sir, sir, I don't think it is either. But But jump down, right? He's banned from social networking. His passport has to be stamped. He's prohibited from jury service. He's denied public housing benefits. Those are significant restrictions to be I just don't understand how they restrict his freedom of movement. Well, the the Williamson case dealing with Washington said that if you impose enough burdens on travel, even though you may not restrict travel and movement, they can't be so cumbersome as to be a restriction on movement and the the regulations, of course, require all address changes to be reported in person notify of intended travel outside the United States 21 days ahead of time, get the scarlet letter stamped on your passport, so that when you notify of future travel, the FBI contacts the police in the jurisdiction, you're allegedly going to try to go to to inform them that you're coming. And who knows what all of this, of course, as a petitioner says, whether it's interstate travel or intrastate travel chills his willingness to travel because he doesn't know what he's going to be meeting if if he goes there, it's going to meet the intricate requirements that exist in other nations or other states. That's a chilling effect on one's travel ability. In addition to the other relatively minor, can I stop you there for a second just on this on on that issue, some of these restrictions or possible conditions that you're referring to are not actually imposed by the state, but are imposed by other governmental entities. Do you have any authority saying that we can consider those third party restrictions in determining whether he's in custody? I don't. It's obviously a requirement that he has to meet as a result of California registration requirements. If he if he wasn't subject to California registration, those other entities restrictions, they would not apply. So it's the predicate for those applications is registration in California. Do you want to reserve the rest of your time? I will do so. Thank you. Great. Thank you. Good morning, Your Honors. I hope you can hear me okay. May it please the court. Deputy Attorney General Joy Utomi on behalf of Respondent Appellee. The threshold jurisdictional requirements for federal habeas corpus relief is that the petitioner be in custody. Here, the sex offender registration requirements under California that appellant is subject to do not severely restrain his physical liberty so as to place him in custody. As we know from Jones, the Supreme Court has defined in custody for purposes of federal habeas relief as either being physically confined or being subject to restrict restraints on one's liberty. And as this court held in Henry v. Lundgren, that severe restraints on one's liberty has to do with the physical liberty of that defendant and whether or not the restraint is of the type of severe immediate restraint on physical liberty necessary to render that defendant in custody for purposes of federal habeas. So when we look at the registration requirements here that appellant has alleged, annual in-person registration requirements is essentially his chief complaint about why he is in custody for purposes of federal habeas. And this court addressed that in Henry v. Lundgren and held that there where the defendant was subject to lifetime registration but also annual in-person registration and re-registration for a new address, that in-person registration did not constitute the type of severe immediate registration on a physical liberty of the defendant there. And that should also be applied here. Appellant also raises several other requirements and many of those do not impede his movement or affect his movement. He mentions he has to submit his fingerprints, DNA, car license, his passport has to be stamped as I believe Your Honor mentioned. He is prohibited from using certain social media. None of those requirements affect his physical movement. None of those requirements track his physical movement, monitor his physical movement or otherwise restrain his physical movement. And as to his ability to use social media or be on certain social media sites, that has to do with a third-party business practice that is not being a restriction imposed by the states. That is a restriction imposed by a third-party business. The fact that he cannot serve on a California jury, this court and many courts have already held that that is a regulatory issue. And so appellant simply cannot identify any restrictions that severely restrain his physical movement. I would also like to point this court to its holding in the Maciel v. Kate case. That case is not directly on point as it dealt with whether or not imposition of sexual offender registration requirements was clearly violating federal law. So it didn't exactly determine whether or not it was in custody for purposes of federal habeas relief. However, it did find that where the defendant there was subject to mandatory GPS monitoring for life, had a lifetime ban on living within 2,000 feet of a school or park, and where the defendant's dangerousness and assessment of dangerousness was publicized on a community website, that those requirements did not impermissibly restrict the liberty of the defendant. So those are all restrictions that even though they may certainly affect the defendant, and some of them do apply to appellant here, they do not constitute a severe restraint on his... But counsel, I think you acknowledge that case is in a different posture, right? Really, it's really... I'm going to summarize it as an ex post facto case. So it's a fundamentally different argument. What about our more recent case in Munoz? I understand that that's Nevada law, but... Correct. You started your argument by indicating, or maybe I read too much into your first statement, that he needs to show that he was in custody in order to file? Is that your... If he had been in custody, let's just take a hypothetical. If a person's in custody when they filed their habeas petition, is it your position that the court would lose jurisdiction if the person were released from custody? No, no, I'm sorry. That is not my position. I think in Munoz we pretty well said that that's not the case, right? He still has to challenge conditions that amount to custody. Correct. Okay, so you're not saying something different from that. That is correct. What about the issue that the district court was concerned about, which is that the online registration and the risk assessment, you know, he's not updated. Again, my paraphrase of his argument, and the district court was concerned that there ought to be a way to challenge that. Well, there is a way to challenge that. On the website itself, it does provide a link or, I believe, a contact information to California DOJ to the agency that manages the website and the recordings and the accuracy of the dangerousness and assessment scores for people to challenge and notice the California Department of Justice of any errors on that website. So there is a way to challenge that, even very plainly stated on the website itself. And as to his claim as to there being errors on the website, the website does make it clear that information on that website can change very quickly, that there's no representation that the information on the site is complete or accurate. And the website even provides specific information on the STATUS-99-R score, which appellant challenges in his briefing, and it shows the specific score appellant received and the time it received it, but it also has a chart showing the various risk levels and risk scores and showing how the scores can decline in risk level based on the defendant's years free in the community. So given all of that information, it does not appear to me that there's any sort of misrepresentation on that website. He's not talking about misrepresentation. He's talking about it being stale and out of date. So are you saying that there would be an administrative process by which he could challenge that and seek to have it updated, or would he have to file in 1983? There appears to be an administrative process on the website itself that essentially it's stated notice of correction, and it gives an email for persons to email if they want to raise any errors that's on the website, including a STATUS-99 score. It does not appear unclear if appellant has availed himself to that, but that is a function where appellant could directly challenge the information that's posted about him on the website. Can I just clarify something? Do you agree that registrants must appear in person to update, like, about change employment, a new vehicle, that all must be done in person? That's not my reading or understanding of his requirements under the sex offender registration law. The in-person requirements have to do with his address, and so there's the annual in-person registration, and then there's an address change. But even within the excerpt of record that appellant attached and the sex offender registration requirements that were listed there, it does not state that if he changes his employment or if he uses a car, that he's subject to having to register in person. And certainly, I think, you know, if or potentially if that were the case, this would look more like the Piasecki case that appellant really relies on, where there the person was required to, you know, register in person every three months, but also register in person if they changed their name, their address, their phone number, their email, their employment, or even use a vehicle. And the court found there that those requirements were just simply too burdensome and would essentially require the defendant's presence at a law enforcement station every month or more in order to fulfill these various required and repeated in-person registration. And that's not what we have here. What we have here is in-person registration for residence changes, but no in-person registration or at least I have not seen anything that suggests it requires in-person registration for an employment change or use of a vehicle or email change. So how do they register those kinds of changes? What is your representation? Are you just saying you don't know for sure that it's in person? Do you know for sure that it's not? I don't know. There's nothing within the record that states that it's in-person registration. There might be a notification where he might be notifying a certain agency, but there's nothing that shows that it requires in-person registration for employment change. And I believe that would be just subject to a notification, but not an in-person registration. Okay. Thank you, counsel. You're over your time. Mr. Sevilla? Thank you, Your Honor. Yes. With respect to the last point, for sure he's got to report employment and employment changes, vehicle and vehicle changes, because the form, which starts at ER 136, the first page lists employment and vehicle identification. So certainly he must do that yearly because he has to fill this form out yearly. Now, whether he has to do it a month earlier, he buys a new car, and he has to go down and register, I don't know. But he certainly has to report all that information. And, again, with respect to the Henry case, Henry had three requirements 25 years ago in California, a current home address, background information, a fingerprint, and a photograph. It did not have a requirement of personal appearance. I think the court threw in a footnote that even if there was personal appearance required, that may not be sufficient to be a sufficient restraint. I certainly would disagree with that. But here we have this form with all sorts of requirements of personal appearances. And also, of course, Henry did not have the website publication of one's picture updated annually and a risk assessment, which is inaccurate. And I don't think the public can be expected or the Senate can be expected to figure out from the charts that his risk assessment has been lowered because, in terms of the public, they may think something has happened to keep his risk assessment higher than it is. And I would finally say that this court's case in Dow, which dealt with the requirement, the simple requirement of 14 hours of class instruction as the final element of one's probation for a DUI, that was sufficient to garner habeas jurisdiction. Well, the requirements on appellant far exceed that. Just in the last 17 years that he's been reporting and having to drive to the police department and fill these forms out, that's going to take a minimum of an hour at a time. That's 17 hours just in that exercise and mandate on his moment. So I would request the court to find that the restraints pled are sufficient to garner habeas corpus jurisdiction. Thank you. Thank you very much, counsel. DEC versus California will be submitted.
judges: WARDLAW, CHRISTEN, SUNG